## CITY OF DETROIT *v.* DETROIT EDISON COMPANY

1. STATUTES—CONSTRUCTION—DEFINITION OF TERMS.

   A term used within the confines of a particular statute may well have a particular meaning or a meaning different from that which it normally has; it is the duty of a court to construe the statute in order to give effect to the expressed intent of the legislative body that enacted it.

2. WORDS AND PHRASES—SMOKE—DEFINITION—ORDINANCE—PURPOSE.

   "Smoke" *held* to include soot, fly ash, and other contaminants when used in a municipal ordinance, the stated purpose of which is to prevent pollution of the air, which makes it unlawful for a person or firm to permit the emission of any smoke greater than a certain density, even though the definition of "smoke" in the ordinance does not specifically mention soot, fly ash, and other contaminants (City of Detroit Air Pollution Control Code, §§ 1.33, 2.2A).

3. CONSTITUTIONAL LAW—DUE PROCESS—STATUTES—VAGUENESS.

   The necessity that unclear terms in a criminal ordinance be further defined by the courts does not automatically mean that they are so vague when read by that class of the public against whom the terms are sought to be applied that the violator may not be convicted of a violation without abridgment of his right to due process of law; all that is required being that the language convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice.

Appeal from Recorder's Court of Detroit, John R. Kirwan, J. Submitted Division 1 January 16, 1969,

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Statutes §§ 218, 223.
[2] 50 Am Jur, Statutes § 259.
[3] 50 Am Jur, Statutes §§ 407–411.

at Detroit.    (Docket No. 4,631.)    Decided March 24, 1969.

The Detroit Edison Company, a New York corporation, was convicted of violation of the Detroit air pollution control ordinance.    Defendant appeals. Affirmed.

*Robert Reese*, Corporation Counsel, and *John F. Hathaway* and *Ronald C. Winiemko*, Assistants Corporation Counsel, for plaintiff.

*Fischer, Sprague, Franklin & Ford* (*William C. Potter, Jr.*, of counsel), for defendant.

BEFORE: FITZGERALD, P. J., and R. B. BURNS and BRONSON, JJ.

FITZGERALD, P. J.   A smoke inspector employed by the air pollution control bureau of the city of Detroit often stationed himself 700 feet from the smoke stacks of defendant-appellant and compared the color of the emissions coming from them with the colors known by him to be given on the Ringelmann chart, the measurement of density of air pollution used by the city.   The color of the emissions observed was darker than that permissible and defendant was eventually found to be criminally guilty of 28 violations of § 2.2A of the air pollution control code of the city of Detroit.[1]

In this appeal, defendant alleges that the term "smoke" as defined at § 1.33 of the code excludes the other contaminants such as soot, fly ash and dust

---

[1] "It shall be unlawful within the city of Detroit for any person, firm or corporation to permit the emission of any *smoke* from any source whatever of a density equal to or greater than that density described as No. 2 on the Ringelmann Chart."   (Emphasis supplied.)

also contained in defendant's emissions which greatly contributed to their dark, and thus illegal, color under § 2.2A.[2] Pursuing the argument, defendant believes that since the smoke from its stacks also contained these additional darkening elements it has not been shown to be sufficiently pollutive smoke apart from the excluded ingredients. Thus, any interpretation of its density which relies solely on an observation of the darkness of its color is alleged to be erroneously made. Finally, if we do find that the code does encompass smoke containing these additional elements, then defendant urges that its rights of due process under the law have been violated by reason of imprecision and vagueness in the language of the code.

The city has defined "smoke" in § 1.33 of the code to be:

"Smoke. The visible, finely divided carbonaceous material that escapes from a substance during combustion, except such other materials as are covered by this ordinance."

We see that soot[3] and fly ash[4] are covered and defined elsewhere in the code. The city presented a complex analysis of smoke content which, basically, determined that soot and fly ash are inseparable elements of *all* smoke caused by combustion. Thus, it is alleged that the general definition of smoke, as given, clearly means that soot and fly ash are "such other materials" for they are always contained in smoke.

---

[2] Testimony of the inspector revealed that "normal" emissions are gray and that smoke and soot are both carbonaceous and black. On cross-examination, the inspector clarified his statement by saying that the presence of soot itself may have little effect on the color of smoke from which it comes. Fly ash may lighten or darken the smoke, depending on its density. The total color is what is measured on the chart.

[3] Air Pollution Control Code of the City of Detroit, § 137.

[4] *Id.*, § 1.18.

What definition shall then be applied to § 2.2A? It is apparent that the term "smoke" as here employed by the city does lack clarity and precision. But ambiguity of a term or word in a statute may not be a sufficient reason to bar its application, for statutory language may well have a particular or different meaning within the confines of a particular statute. Given the "typical" meaning of the word (if any word could be said to be unquestionably definitive in all circumstances), its use in a statute may be more broad, more precise, more specialized, or more technical than the reader would reasonably expect.[5] It then may become the duty of the court to interpret and construe the word or terms in the statute in order to give effect to the expressed intent of the legislative body so as not to render the statute and the intent ineffective.[6]

The trial court proceeded in this manner after finding the term "smoke" to be susceptible of more than one meaning, and it attempted to give the word clarity consistent with the general purpose of prevention of air pollution sought to be accomplished by the common council. References were made to several provisions of the code which convinced the

---

[5] *Satterly* v. *City of Flint* (1964), 373 Mich 102.

[6] *People* v. *Babcock* (1955), 343 Mich 671, citing *City of Grand Rapids* v. *Crocker* (1922), 219 Mich 178:

"If the language employed in a statute is plain, certain and unambiguous, a bare reading suffices and no interpretation is necessary. The rule is no less elementary that effect must be given, if possible, to every word, sentence and section. To that end, the entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole.

"No rule is better settled than, in construing a statute, effect must be given to every part of it. One part must not be so construed as to render another part nugatory, or of no effect. The same rule applies to words in construing a sentence. (Citing cases.)"

See, also, *People* v. *Lowell* (1930), 250 Mich 349; *Board of Education of Presque Isle Township School District No. 8* v. *Presque Isle County Board of Education* (1961), 364 Mich 605; *City of Lansing* v. *Johnson* (1968), 12 Mich App 139.

lower court, and this Court, that the expressed intention of the common council of the city of Detroit was to prevent pollution of the air by emissions of smoke, fly ash, soot, and other possible contaminants.  The preamble of the code reads as follows:[7]

"An ordinance to provide for the control of smoke, the constituent parts thereof, and air pollution within the corporate limits of the city of Detroit;
\* \* \*

"Whereas, the excessive emission of dense smoke within the corporate limits of the city of Detroit and the resultant effect upon the public health and welfare require the adoption of a comprehensive and integrated plan of smoke control; and

"Whereas, in conjunction with the smoke control program it is desirable to adopt appropriate regulations to reduce air pollution caused by excessive soot, cinders, fly ash, dust, noxious acids, fumes and gases \* \* \* ,"

and also, in a section providing for injunctive relief:

"Sec. 2.1.  *The escape of smoke, soot,* cinders, noxious acids, fumes, gases, industrial dust or *fly ash as herein prohibited* is hereby declared to be a nuisance and may be summarily caused to be abated \* \* \* .  Such abatement may be in addition to the fines and penalties hereinafter provided."  (Emphasis supplied.)

Section 2.2B reads similarly to § 2.2A, substituting the other contaminants for the term "smoke".

However, a mere reference to the intent of the legislature cannot be our final answer to defendant's appeal of its criminal conviction.  It is predictably asserted by defendant that if the meaning of the term in the code, as given, does require construction

---

[7] *Fidlin* v. *Collison* (1967), 9 Mich App 157.

and interpretation, then it is too vague a definition upon which to base a criminal conviction.[8] The necessity that unclear terms in a criminal statute be further defined does not mean that they therefore are so vague when read by the class of the public against whom the terms are sought to be applied, that the violator may *not* be convicted without violation of its right to due process of the law.[9] The particular knowledge of which they may be possessed can provide them with fair and reasonable notice of their duties under the law despite the ambiguity of a particular term. They may well be informed of the "nature and cause of the accusation".

The actual meaning of the term and of the entire statute, as read by a person in the position of the defendant, bears heavily on the validity of an argument of vagueness and lack of certainty.[10] Although it is a close question, we do not here find a problem of failure of communication between the enacting legislative body and the members of the public whose behavior is sought to be controlled.[11] The common council chose words and expressed intentions which are not capable of being so completely misunderstood by a company in the position of defendant which uses at least 9 large smokestacks.[12] Defendant

[8] *People* v. *Goulding* (1936), 275 Mich 353; *People* v. *Austin* (1942), 301 Mich 456; *People* v. *Sarnoff* (1942), 302 Mich 266, and authority also therein.

[9] US Const, Ams 6, 14.

[10] *United States* v. *Gaskin* (1944), 320 US 527 (64 S Ct 318, 88 L Ed 287); *Boyle Motor Lines* v. *United States* (1952), 342 US 337 (72 S Ct 329, 96 L Ed 367); also, see annotation following; *Roth* v. *United States* (1957), 354 US 476 (77 S Ct 1304, 1 L Ed 2d 1498), citing *United States* v. *Petrillo* (1946), 332 US 1 (67 S Ct 1538, 91 L Ed 1877): "All that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' "

[11] 2 Sutherland, Statutory Construction, 1969 Cum Supp, § 4501.1, pp 113–119. An excellent discussion on the relative values of the "legislative intent" approach to construction of a statute as compared with the "meaning of the statute" method.

[12] See annotation to *Boyle Motor Lines, supra,* 96 L Ed 374, 378.

was fairly and reasonably informed of the obligations cast upon it by the city of Detroit not to pollute the air with smoke and its elements before observation was made of its smoke.

Affirmed.   No costs, a public question being involved.

All concurred.