**OIL HEAT INSTITUTE, INC., et al.,**
**Appellants,**

v.

**ALASKA PUBLIC SERVICE CORPORA-**
**TION and Alaska Public Utility**
**Commission, Appellees.**

**No. 1850.**

Supreme Court of Alaska.

Nov. 16, 1973.

Bruce E. Gagnon of Atkinson, Conway, Young, Bell & Gagnon, Anchorage, for appellants.

B. Richard Edwards, Asst. Atty. Gen., Anchorage, John E. Havelock, Atty. Gen., Juneau, for appellee Alaska Public Util. Comm.

Andrew Hoge and John R. Strachan, of Robison, McCaskey, Strachan & Hoge, Anchorage, for appellee Alaska Public Service Corp.

OPINION

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

OPINION

CONNOR, Justice.

This case presents a question of administrative procedure.

In 1971 appellants, oil heat dealers in the area of Anchorage, Alaska, filed a complaint seeking a determination by the Alaska Public Utilities Commission (hereafter "P. U. C.") that a proposed tariff revision by Alaska Public Service Corporation (hereafter "A. P. S. C.", formerly Anchorage Natural Gas Company) was illegal, unjust, discriminatory and unduly preferential, and that it amounted to an unfair competitive practice. The tariff revision embodied a promotional plan for increasing the number of customers in the Anchorage market area using gas as opposed to fuel oil. Without receiving evidence, the P. U. C. held the complaint to be without merit and dismissed the attempted proceeding. After an appeal to the superior court, which sustained the P. U. C., appellants now appeal to this court.

The P. U. C.'s dismissal is premised on the notion that A. P. S. C.'s promotional plan had already been found valid in an earlier proceeding in 1967 in which it considered the plan in connection with the statutes then applicable. This apparently explains why the P. U. C. did not feel obliged to consider the matter further in 1971. We must, therefore, review certain statutory changes and the nature of the 1967 and 1971 proceedings in order to focus upon the problem presented on appeal.

In 1967 Anchorage Natural Gas Company began to publicize a program called "Pipe Now—Save Now", to increase its sales of natural gas. The object of the plan was to induce persons using fuel oil for heating purposes to convert to natural gas as a source of energy. Under the plan, Anchorage Natural Gas Company offered to reimburse persons who agreed to convert from fuel oil to natural gas. The company would pay one-half the cost of their fuel oil bills from the time they

agreed to convert pursuant to the offer to the date the conversion was completed. The plan was available only to persons using fuel oil for heating and only to persons having premises near which gas mains had been installed but who lacked service lines from the mains to their premises. At that time many of the persons who are appellants in this case filed a complaint which assailed the validity of the plan. In 1967 the Public Service Commission ostensibly made a determination that the plan was valid under then applicable laws. The protestants did not appeal from that decision of the Public Service Commission.

In 1971 A.P.S.C. (successor of Anchorage Natural Gas Company) filed an application with the P.U.C. for a tariff revision which encompassed the "Pipe Now—Save Now" plan. This filing occurred as a result of advice from some members of the P. U. C. staff that the plan would be unlawful unless contained in A. P. S. C.'s filed tariffs. Appellants promptly filed the protest which is the subject of this appeal. The dispositive portions of the P. U. C.'s 1971 order contain the following recitals:

## "FINDINGS

### THE COMMISSION FINDS:

1. Alaska Public Service Corporation is a public utility as defined in AS 42.-05.701 and is subject to the regulatory jurisdiction of the Alaska Public Utilities Commission.

2. Alaska Public Service Corporation filed as a tariff revision its 'Pipe Now—Save Now' program for the sole purpose of compliance with AS 42.05.391(c), and not as a new program offering.

3. The questions raised in the complaint by the Oil Heat Institute, with the one exception of the right of the utility to offer its program without that program being a part of its filed tariff (AS 42.05.391(c)) are without merit, since they were previously resolved in Cause No. U–67–5.

4. The public interest will be best served by dismissal of Oil Heat Insti-

tute's protest, and the acceptance for filing of the tariff revision of Alaska Public Service Corporation in which the 'Pipe Now—Save Now' program is offered.

## ORDER

### THE COMMISSION ORDERS:

1. The tariff revision of Alaska Public Service Corporation titled 'Section 1100: Seasonal Promotion—"Pipe Now—Save Now"' and noticed under the reference TA1–4 is hereby accepted for filing effective as of May 1, 1971.

2. The protest of the Oil Heat Institute filed herein on April 14, 1971 is hereby dismissed."

The central question before us is whether the P. U. C. was in error in finding that "the questions raised in the complaint by the Oil Heat Institute . . . are without merit, since they were previously resolved in Cause No. U–67–5."

We first observe that the legal superstructure governing the regulation and operation of public utilities was appreciably different in 1967 than it is at this time. In 1967 the provisions which would most closely pertain to the issue presented here were the statutory sections then numbered AS 42.05.460 and 42.05.520. They read as follows:

"Sec. 42.05.460. Orders relating to service. If, upon investigation, the commission finds that a regulation, measurement, practice, act or service is unjust, unreasonable, unsafe, insufficient, preferential, unjustly discriminatory or otherwise in violation of the provisions or intent of this chapter, or finds that a service is inadequate or that a service which can be reasonably demanded cannot be obtained, the commission shall determine and by order fix just and reasonable measurements, regulations, acts, practices or service to be furnished, imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, unsafe, insufficient, preferential, unjustly discriminatory, inade-

quate, or otherwise in violation of this chapter, and shall make orders respecting the measurement, regulation, act, practice or service which are just and reasonable."

"Sec. 42.05.520. Orders relating to rates. If, upon investigation, the commission finds that a rate, toll, charge, schedule or joint rate is unjust, unreasonable, insufficient or discriminatory, or is preferential or otherwise in violation of this chapter, the commission shall determine, and by order fix just and reasonable rates, tolls, charges, schedules or joint rates to be imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential or otherwise in violation of this chapter."

In 1970 the legislature effected a comprehensive revision of the statutory law regulating public utilities. Section 5, Ch. 113 SLA 1970. The above-quoted sections which were in force in 1967 were repealed in the 1970 legislation. The latter act contained the statutory language on which appellants are relying in the case at bar. This language, no comparable provision of which can be found in the law in force in 1967, is placed in AS 42.05.391(c). It reads:

"No public utility shall directly or indirectly refund, rebate or remit in any manner, or by any device, any portion of the rates and charges or charge, demand or receive a greater or lesser compensation for its services than is specified in its effective tariff. No public utility may extend to any customer any form of contract, agreement, inducement, privilege or facility, or apply any rule, regulation or condition of service except such as are extended or applied to all customers under like circumstances. No public utility may offer or pay any compensation or consideration or furnish any equipment to secure the installation or adoption of the use of utility service unless it conforms to a tariff approved by the commission, and the compensation, consideration or equipment is offered to all persons in the same classification using or applying for the public utility service; in determining the reasonableness of such a tariff filed by a public utility the commissioner shall consider, among other things, evidence of consideration or compensation paid by a competitor, regulated or nonregulated, of the public utility to secure the installation or adoption of the use of the competitor's service."

The difference between the former general language prohibiting discriminatory practices and the statutory language currently applicable is striking. The statute now in effect is much more specific in its possible application to the plan in question. Yet, by its dismissal, the P.U.C. has necessarily equated the former and present laws.

We are unable to perceive how an earlier interpretation of statutory language which is patently different from that now in force could possibly be dispositive of the present controversy. To so hold would be contrary both to the canons of logic and to the most rudimentary principles of law.

The argument advanced by the P.U.C. seems to rely upon some unstated notion of estoppel or administrative res judicata. But these doctrines cannot come into play unless the essential conditions for their application have been fulfilled. It is an elementary proposition that,

"[W]here the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." Cromwell v. County of Sac, 94 U.S. 351, 353, 24 L.Ed. 195 (1876). *See also* Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

■ Appellants were not seeking a new determination of how former AS 42.05.460 and 42.05.520 might apply to the "Pipe

Now—Save Now" plan. They were asserting that the plan was unlawful under AS 42.05.391(c), an entirely different statute, raising entirely different questions about the propriety of the plan. It is the manifest intent of the legislature that the P.U.C. shall adjudicate the legality of such plans. Yet by a deflective and premature refusal to consider appellants' complaint the P.U.C. has managed to impede the legislative directive and has caused appellants at least two years delay in obtaining a determination on the merits of their complaint. In short, by the P.U.C.'s erroneous action the appellants have been denied their proper day in court. We hold that it was error for the P.U.C. to dismiss appellants' complaint. We are buttressed in this conclusion by the terms of the 1967 order, which make it difficult for the reader to discern the intention of the Public Service Commission in entering that order.

Although the 1967 order purports to dispose of the controversy then presented, it contains a provision which stands as a model of bureaucratic obfuscation. This lapse into syntactical aphasia evinces an apparent desire by the Public Service Commission to guard against ever being bound or reviewed as to any aspect of its determination. The provision reads:

> "This order is without prejudice to any findings or orders which have been or hereafter may be made by the Commission, its staff, Anchorage Natural Gas Corporation, or any affected party herein in any proceeding now pending or hereafter instituted by, or against, Anchorage Natural Gas Corporation or any other company or person."

While there may be doubt as to what the 1967 order could or did mean, there can be no doubt that it did not dispose of the present controversy.

The P.U.C. argues that under the "reasonable basis" doctrine employed by this court in Swindel v. Kelly, 499 P.2d 291, 298 (Alaska 1972); Kelly v. Zamarello, 486 P.2d 906, 911 (Alaska 1971); Pan American Petroleum Corp. v. Shell Oil Co., 455 P.2d 12, 21–23 (Alaska 1969); and Whaley v. State, 438 P.2d 718, 722 (Alaska 1968), the P.U.C.'s action should be sustained.[1] These cases are not apposite. We are dealing neither with an agency's reasonable, interpretative rules nor with an adequate factual record. The P.U.C.'s simple refusal to consider a meritorious complaint cannot be shrouded or made to vanish by resort to the "reasonable basis" exhortation. That which is plainly unreasonable cannot be made reasonable merely by a play on words.

We are urged by appellants to determine as a matter of law that the "Pipe Now—Save Now" plan violates the provisions of AS 42.05.391(c). However, we lack both a factual record and the reasoned argument which would be developed in a full proceeding before the commission. The question presented here is one particularly suited for initial consideration by the P.U.C. Contentions both in support of and against the validity of the plan can readily be imagined.

When a case raises questions of fact not within the ordinary experience of courts, or if the case requires the exercise of administrative discretion, primary resort should be had to the administrative agency having jurisdiction over the subject matter. Far East Conference v. United States, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952).[2]

---

1. The "reasonable basis" doctrine is typically employed to sustain an agency's interpretation of a statute when that interpretation is reasonable and where it reflects administrative experience with the subject matter, responsible treatment of the facts, and the realization of statutory policies. S.E.C. v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

2. The doctrine of primary jurisdiction only governs whether a court or the agency makes the initial decision on an issue, not whether a court or agency will finally decide the issue. See 3 K. Davis, Administrative Law, Sec. 19.01, 3 (1958).

We must reverse and remand this case to the superior court, for further remand to the P.U.C., for proceedings consistent with this opinion. We direct that the P.U.C. proceed expeditiously to a determination of the issues raised by appellants' complaint.

Reversed and remanded.