v.

STATE of Alaska, Appellee.

Ida JOUSMA, Appellant,

v.

STATE of Alaska and C.G.A., Appellees.

Nos. S–3476, S–3477.

Supreme Court of Alaska.

Jan. 10, 1992.

R. Scott Taylor, Asst. Public Defender, and John Salemi, Public Defender, Anchorage, for C.G.A.

Carol Daniel, and Michael Gershel, Alaska Legal Services, Anchorage, Linda Beecher, Asst. Public Defender, and John Salemi, Public Defender, Anchorage, for Ida Jousma.

Teresa Williams, Asst. Atty. Gen., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for State of Alaska.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

## I. FACTS AND PROCEEDINGS

C.G.A. is a minor who has received social security survivor's benefits from the time of his father's death. Social security regulations require that a representative payee ("payee") be appointed for most minors who receive survivor's benefits. 20 C.F.R. § 404.2010(b) (1990).[1] Here, the Social Security Agency ("SSA") originally designated C.G.A.'s mother, Ida Jousma, as C.G.A.'s payee. While serving as C.G.A.'s payee, Jousma received $150 per month from SSA for the benefit of C.G.A.

In December of 1987, when he was fifteen, C.G.A. was placed on probation for several counts of third degree criminal mischief and placed in foster care pending placement in the Jesse Lee Home, a home for troubled youths. On January 25, 1988, he was formally committed to the custody of the Alaska Department of Health and Social Services ("DHSS").

In May of 1988, C.G.A. was implicated for school vandalism and apprehended while driving a stolen car. As a result, he was adjudicated a delinquent and placed in McLaughlin Youth Center ("McLaughlin").

C.G.A.'s probation officer informed the superior court that C.G.A.'s mother was receiving $150.00 per month from SSA as C.G.A.'s payee. Thereafter the superior court entered a child support order requiring Jousma to pay $150.00 per month to the state, effective June 1, 1988. This order specified that the amount of $150.00 was "[t]he sum of payments received as Social Security benefits of a deceased parent."

Jousma then moved to vacate the child support order. C.G.A. joined this motion, asking that his benefits be held in trust for him. Thereafter, Jousma voluntarily relinquished her payee status. The SSA then held C.G.A.'s funds pending designation of a new payee. That same month, the state garnished $610.50 from Jousma's permanent fund dividend to partially satisfy the accrued unpaid child support obligation.

Subsequently, the superior court determined that Jousma, as a poverty level parent, should pay $40 per month child support to the state, pursuant to AS 47.23.120(c)[2] and Alaska R.Civ.P.

1. While we recognize the relevant federal regulations were amended in 1989, the relevant provisions have remained constant before and after the changes. Therefore, we quote to the more recent regulations.

2. AS 47.23.120 (now AS 25.27.120) states in part, **Obligor liable for public assistance furnished obligee.** (a) An obligor is liable to the state in the amount of assistance granted under AS 47.25.310–47.25.420 to a child to whom the obligor owes a duty of support except that if a support order has been entered, the liability of the obligor may not exceed the amount of support provided for in the support order.
(b) An obligor is liable to the state in the amount of the cost incurred if the state is maintaining a child to whom the obligor owes a duty of support in a foster home or institution, except that if a support order has been entered, or an agreement for payment of that cost executed between the obligor and the state, the liability of the obligor may not exceed the amount provided in the support order or agreement.
(c) Within 30 days after the agency knows the identity and address of an obligor who resides in the state and who is liable to the state under this section, the agency shall send written notification by certified mail to the obligor parent of the obligor's accruing liability. The notice required under this subsection must be in clear, concise, and easily readable

90.3.[3] Additionally, the court found that the state was entitled to use the $150 monthly social security funds for the care of C.G.A. The court based its determination on federal regulation 20 C.F.R. § 404.-2040(a) & (b) (1990).[4] The superior court also found that Jousma had not previously spent the social security survivor's benefits on maintenance of C.G.A., as she was required to do under the applicable federal regulations. The superior court further ordered Jousma to remit those funds which she had received as payee since June 1, 1988 to the state. The court also observed that the state could apply to become the payee for C.G.A., and recommended that the state do so.

On May 18, 1989, the superior court entered the following order:

1. The State of Alaska may apply to be the representative payee of [C.G.A.'s] social security survivor's benefits. The state may use these funds to pay for his institutional and other care.

2. Pending the designation of the state as the representative payee of the minor's benefits, Mrs. Jousma, the minor's mother, will remit the funds she receives as representative payee to the state.[5]

Both Jousma and C.G.A. appeal. In their combined brief, they raise the following issues:

1. Whether the Alaska Department of Health and Social Services may obtain a minor's social security survivor's benefits to reimburse itself for the cost of his incarceration.

2. Whether the trial court erred in compelling a parent to pay over a child's social security survivor's benefits to the Alaska Department of Health and Social Services as payment for cost of the minor's incarceration.

3. Whether the trial court erred in making findings concerning the mother's use of C.G.A.'s social security benefits.[6]

## II. DISCUSSION

Both Jousma and C.G.A. argue that federal law preempts the superior court's May 18, 1989 order. We uphold the superior court's determination that the state may apply to become the payee for C.G.A.[7] However, we reverse the superior court's ruling that the state may order Jousma to remit funds which she lawfully received as representative payee to the state. We retain jurisdiction of the question whether the state, as designated representative payee, may apply C.G.A.'s benefits toward the cost of his care at McLaughlin in order to afford the parties the opportunity to

language. The notice may accompany other communications by the agency.

3. Jousma does not appeal this order.

4. 20 C.F.R. § 404.2040 (1990) reads in part,
 **Use of benefit payments:**
 (a) *Current Maintenance.* (1) We will consider that payments we certify to a representative payee have been used for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance. Current maintenance includes cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items. . . .
 (b) *Institutional care.* If a beneficiary is receiving care in a Federal, State, or private institution because of mental or physical incapacity, current maintenance includes the customary charges made by the institution, as well as expenditures for those items which will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions while in the institution.

5. On March 23, 1989, SSA designated the Division of Family and Youth Services as the payee for C.G.A. The social security survivor's benefit amount had increased to $209 per month. There is no indication in the record or briefs as to who received the benefits during the period from September, 1988 to March, 1989. The funds received by the state on C.G.A.'s behalf have been paid into the general fund of the state. C.G.A. has a severe hearing loss problem and a vision problem. As of November 1988, these needs had not been attended to at McLaughlin.

6. The parties agree that the first two issues involve the interpretation of statutes. The proper standard of review is the substitution of judgment test. *Norton v. Alcoholic Beverage Control Bd.*, 695 P.2d 1090, 1092 (Alaska 1985). Because we decide this case on the statutory issues, we do not reach the disputed findings of fact.

7. Appellants agree that SSA may select the state to become payee.

obtain an initial determination of this issue from the Social Security Agency.

### A. *Jousma's Appeal.*[8]

Federal social security law unequivocally states that "none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process...." 42 U.S.C. § 407(a) (1983) ("section 407(a)"). Both Jousma and C.G.A. argue that, under the supremacy clause of the United States Constitution, section 407 preempts the state from appropriating C.G.A.'s SSA benefits. *See* U.S. Const. art. VI.

Jousma's appeal is controlled by *Bennett v. Arkansas*, 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988) (per curiam). That case "involve[d] an attempt by the State of Arkansas to attach certain federal benefits paid to individuals who are incarcerated in Arkansas prisons," pursuant to an Arkansas statute which authorized the state to seize a prisoner's property in order to reimburse the state for the cost of maintaining the prisoner. *Id.* at 396, 108 S.Ct. at 1205. The Supreme Court of the United States held that section 407(a) "unambiguously rules out any attempt to attach Social Security benefits." *Id.* at 397, 108 S.Ct. at 1206. The Court also rejected the argument that section 407 contained an implied exception when the state has provided the recipient with care and maintenance. *Id.*

The child support order was a "legal process" which attached C.G.A.'s social security benefits. So long as someone other than the state was designated as payee for C.G.A., the state had no legal right to C.G.A.'s funds. *See Brinkman v. Rahm*, 878 F.2d 263 (9th Cir.1989) (section 407 preempts state from attaching involuntary mental patients' Social Security Old Age Survivor's and Disability Insurance benefits).[9]

The state correctly notes that this interpretation would prevent the state from ordering a noncustodial payee to pay a child's social security benefits over to a custodial parent. This could lead to an inequitable result if the appointed payee was inappropriately spending the beneficiary's funds. However, federal law provides a remedy when the appointed payee abuses her fiduciary duty. *See* 42 U.S.C. § 408(a)(5) (1991 Supp.); [10] 20 C.F.R. § 404.-2041 (1990).[11] The very existence of a federal remedy preempts state interference with an appointed payee's decision to spend the social security benefits. *See Brevard v. Brevard*, 74 N.C.App. 484, 328 S.E.2d 789, 792 (N.C.App.1985). Therefore, the superior court's order requiring Jousma, as representative payee, to remit C.G.A.'s benefits to the state conflicts with federal law.

Moreover, we disagree with the state's contention that survivor's benefits can be distinguished from other social security benefits. The state believes that C.G.A.'s survivors benefits were to "re-

---

**8.** At the outset, we note that Jousma's appeal relates back to any funds that the state obtained from Jousma as a result of the June 1988 child support order. While Jousma did not appeal that order, she did move to vacate it in August 1988 on preemption grounds.

**9.** The court in *Brinkman* did not decide whether benefits might be lawfully counted for the purpose of computing the patients' liability to the state, because that issue was not properly raised. Similarly, the issue of whether funds retained by Jousma may be counted in calculating her liability under AS 47.23.120 is not presented in this case. The trial court's order was specifically tied to Jousma's receipt of the $150 per month from SSA and not to her general financial ability.

**10.** 42 U.S.C. § 408(a)(5) states in relevant part,

Whoever ... having made application to receive payment under this subchapter for the use and benefit of another and having received such a payment, knowingly and willfully converts such a payment, or any part thereof, to a use other than for the use and benefit of such other person ... shall be guilty of a felony....

**11.** 20 C.F.R. § 404.2041 reads in relevant part,

The payee in his or her personal capacity, and not SSA, may be liable if the payee misuses the beneficiary's benefits.

We have previously recognized that federal regulations take on the character of law. *State v. Alaska Land Title Ass'n*, 667 P.2d 714, 725 (Alaska 1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 168 (1984).

place the decedent's support, which has been lost through his death" and that the state has merely "stepped into the role of *parens patriae.*"

In making this argument, the state relies on *Rose v. Rose,* 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987). In *Rose,* the United States Supreme Court upheld a state's contempt proceeding against a veteran for unpaid child support, even though the veteran's only source of income was federal veteran's benefits. Veterans' benefits are protected by 38 U.S.C. § 3101(a) which has an anti-attachment provision similar to section 407(a). *Id.* at 630, 107 S.Ct. at 2036. The Court found that state contempt proceedings would not impose on the policy against placing the Veterans' Administration in the position as a collection agency. *Id.* at 630, 635, 107 S.Ct. at 2036, 2038. More importantly, the Court distinguished other cases in which it had found preemption: in veterans' benefit cases, Congress clearly intended that the benefits support not only the veteran, but the veteran's family as well. *Id.* at 633–34, 107 S.Ct. at 2037–38. In *Bennett,* however, the Supreme Court limited *Rose* to cases where the state is acting on behalf of a beneficiary of the protected federal funds. 485 U.S. at 398, 108 S.Ct. at 1206. As the Court said in *Bennett,* "[h]ere, in contrast, the State cannot be said to be a 'beneficiary' of petitioner's Social Security benefits." *Id.*

### B. *C.G.A.'s Appeal* [12]

C.G.A. raises two preliminary arguments to overturn the superior court's order which provided that the state is authorized, as representative payee, to use C.G.A.'s social security benefits to pay for his institutional care provided by the state. First, C.G.A. asserts that DHSS has no authority to expend these funds for reimbursement purposes, and hence such spending consti-

tutes an abuse of agency power. Second, C.G.A. contends that the state is preempted by federal law from spending C.G.A.'s funds to reimburse itself for institutional care furnished to C.G.A. We conclude that statutory authority exists for the state to be designated C.G.A.'s representative payee, and that, as payee, the state can devote C.G.A.'s benefit funds to authorized expenditures. However, we conclude that the question whether the state may apply C.G.A.'s SSA benefits towards the cost of his care at McLaughlin should, under the doctrine of primary jurisdiction, be submitted to the Social Security Agency for initial determination.

### 1. DHSS has statutory authority to utilize federal funds provided for C.G.A.'s care.

 C.G.A. argues that "[n]o state statute or regulation authorizes [DHSS] to utilize C.G.A.'s social security benefits to pay for the cost of his institutionalization." However, AS 47.10.230(b) states, in part,

The department may pay the costs of maintenance which are necessary to assure adequate care of the child, and may accept funds from the federal government that are granted to assist in carrying out the purposes of this chapter, or that are paid under contract entered into with a federal department or agency.

This statute allows DHSS to accept funds from the federal government. Under the terms of the statute, DHSS's use of these funds must comport with federal law. As C.G.A. concedes, federal statutes and regulations allow states to act as payee for social security beneficiaries. *See* 20 C.F.R. § 404.2021(b)(7) (1990).[13] Given the clarity and specificity of AS 47.10.230(b) and 20 C.F.R. § 404.2021(b)(7), we find no merit to C.G.A.'s argument that DHSS may only proceed pursuant to regulations adopted

---

12. While C.G.A. joined in Jousma's motion to vacate the child support order, we have already determined that all funds received by DHSS pursuant to that order must be returned to Jousma for Jousma to spend on C.G.A.'s behalf. What we are designating as "C.G.A.'s appeal" covers that period of time after Jousma relinquished her payee status.

13. 20 C.F.R. § 404.2021(b) enumerates the categories of preferred payees for beneficiaries under the age of eighteen. The list includes "An authorized social agency or custodial institution." 20 C.F.R. § 404.2021(b)(7).

under the Administrative Procedure Act. Under the terms of AS 47.10.230(b), however, DHSS may only make such use of C.G.A.'s funds as authorized by federal law.[14]

2. Federal regulations do not categorically prevent states from reimbursing themselves for institutional care provided to beneficiaries.

■ The superior court's order of May 1989 provides that "[t]he state may use these funds to pay for [C.G.A.'s] institutional and other care." C.G.A. argues that this portion of the order is preempted by section 407 because his funds are being spent in a manner contrary to his wishes. He contends that the state "may not seize his benefits even if [it] were selected as his payee." In other words, C.G.A. seems to argue that any use of his funds by the state is preempted, even though there have been no formal attachment proceedings. We reject this argument. Social security regulations allow a state to become a representative payee. 20 C.F.R. § 404.-2021(b)(7). The regulations also allow representative payees to use some or all of the benefits to pay for appropriate institutional care.[15] The regulations do not require that the representative payee consult with the beneficiary before spending the funds. Thus, so long as the state agency performs its duties as representative payee and spends the funds only on authorized expenses, it would not violate the prohibition on attachment found in section 407(a)'s ban on attachment.

3. Did the superior court err when it held that the state may spend C.G.A.'s benefits on the cost of his care at McLaughlin?

We have previously determined that both federal and state law allow the state to become the representative payee for C.G.A. and allow the state to spend his social security survivor's benefits on any expense authorized by federal law. We must now address the question whether federal law authorizes the state to spend C.G.A.'s funds on his care at McLaughlin.

C.G.A. argues that 42 U.S.C. § 407(a) precludes DHSS from seizing his social security benefits over his objection, even under circumstances where DHSS acts as his representative payee. C.G.A. further argues that while 20 C.F.R. § 404.2040 provides that benefits may be used for maintenance and institutional care, the regulations do not address the question of whether a court may compel payment of benefits to a state agency for the costs of incarceration over the beneficiary's objection.[16] In opposition the state argues that the cost of institutional care is reimbursable, regardless of the type of institution, because the component of maintenance is separable from the component of detention.

■ Whether the state can obtain reimbursement for incarceration costs from

---

14. The state's authority to spend these funds is limited to spending on maintenance that does not conflict with social security laws and regulations. Thus, the state could legitimately apply C.G.A.'s benefits toward foster care, but not, as explained below, towards the cost of juvenile detention. Additionally, DHSS could legitimately establish a children's fund account for C.G.A. See 20 C.F.R. § 404.2045; 7 AAC 52.085.

15. 20 C.F.R. § 404.2040 reads in part,
 (b) *Institutional care.* If a beneficiary is receiving care in a Federal, State, or private institution because of mental or physical incapacity, current maintenance includes the customary charges made by the institution, as well as expenditures for those items which will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions while in the institution.

See also 42 U.S.C. § 405(j) (1983 & Supp.1991), which states in part,
 (3)(A) In any case where payment under this subchapter is made to a person other than the individual entitled to such payment, the Secretary shall establish a system of accountability monitoring....
 ....
 (C) Subparagraph (A) shall not apply in any case where the other person to whom such payment is made is a State institution. In such cases, the Secretary shall establish a system of accountability monitoring for institutions in each State.
Clearly, federal law contemplates state institutions as payees and does not prohibit states from reimbursing themselves.

16. See *supra*, n. 15 for the text of 20 C.F.R. § 404.2040(b).

C.G.A.'s social security benefits is a question which we believe should initially be determined by the Social Security Agency.[17] Thus, while retaining jurisdiction over the issue, we conclude that the parties should be afforded the opportunity to obtain an initial determination of this question from the Social Security Agency.

Our decision to afford the parties an opportunity to obtain an initial decision from the Social Security Agency rests upon application of the doctrine of primary jurisdiction.[18] As noted by Professor Davis:

> Primary jurisdiction is a doctrine of common law, wholly court-made, that is designed to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented.[19]

*G & A Contractors, Inc. v. Greenhouse, Inc.,* 517 P.2d 1379, 1382, 1383 (Alaska 1974) contains the following discussion of the doctrine of primary jurisdiction:

> The legal theory which forms the touchstone of appellants' arguments is founded on the administrative law doctrine of primary jurisdiction. We are instructed by Professor Davis that the doctrine of primary jurisdiction deals with the question of whether a court or an administrative agency should make the initial decision on a given issue. 3 K. Davis, Administrative Law Treatise § 19.01 at 2 (1958). Its purpose is to help a court decide whether it should refrain from exercising its jurisdiction until after the agency has determined some question or an aspect of some question arising in the proceedings before the court. The operational concept underlying the doctrine is the need for an orderly and reasonable coordination of the work of agencies and courts. Whatever the agency's expertise, opines Davis, the court should not act on a subject peculiarly within the agency's specialized field without first taking into account what the agency has to offer. Otherwise, litigants who are subject to the agency's continuous regulation may become victims of uncoordinated and conflicting requirements.

> .This, of course, is hardly to say that the courts must in each and every case defer to an agency determination. For implicit in the concept of orderly and reasonable coordination is the requirement that the question of deferring to agency expertise be decided with reference to the unique facts of each case.[20]

(Footnote omitted.)

In accordance with the foregoing, we conclude that the particular circumstances in the instant case require that the issue in controversy be referred to the Social Security Agency for initial determination.[21]

## III. CONCLUSION

The superior court's order requiring Jousma to remit to the state the funds

**17.** The Social Security Agency should be requested to determine whether 20 C.F.R. § 404.-2040(b) is limited to the costs of mental or physical care institutions; whether the state as a representative payee must first conduct an individual assessment of the beneficiary's needs before using the benefits to reimburse itself for the costs of C.G.A.'s incarceration; and whether reimbursement in this context is violative of 42 U.S.C. § 407(a).

**18.** In *Oil Heat Institute, Inc. v. Alaska Pub. Serv. Corp.,* 515 P.2d 1229, 1233 n. 2 (Alaska 1973) we observed that:

> The doctrine of primary jurisdiction only governs whether a court or the agency makes the initial decision on an issue, not whether a court or an agency will finally decide the issue. See 3 K. Davis, Administrative Law, Sec. 19.01, 3 (1958).

**19.** 4 K. Davis, Administrative Law, Sec. 22:1, 81 (1983). Professor Davis further explains that:

> The doctrine of primary jurisdiction usually does nothing more than allocate power between courts and agencies to make *initial* determinations. It usually does *not* allocate power to make *final* determinations, although it occasionally does. When a court holds that an agency has primary jurisdiction to decide a particular question, the power of that court or of another court to review the agency's determination usually continues.

*Id.* at 82 (emphasis in original).

**20.** *See also, State v. Zia, Inc.,* 556 P.2d 1257, 1262, 1263 (Alaska 1976); *Stock v. State,* 526 P.2d 3, 13, 14 (Alaska 1974).

**21.** *See* 3 K. Davis, Administrative Law, Sec. 19.-07, 42 (1958).

which she received as representative payee is reversed. The question of whether the state as representative payee may apply C.G.A.'s social security benefits toward the cost of his care at McLaughlin is referred to the Social Security Agency for initial determination.[22]

22. As indicated previously, this court will retain jurisdiction over the issue while affording the parties the opportunity of obtaining an initial determination from the Social Security Agency.