**STATE of Alaska, Petitioner,**

v.

**Howard PALMER, Respondent.**

**No. S–5585.**

Supreme Court of Alaska.

Oct. 7, 1994.

Lance B. Nelson, Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for petitioner.

John M. Murtagh, Anchorage, for respondent.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

*OPINION*

MATTHEWS, Justice.

Howard Palmer obtained a permit for himself, his wife, and his son to participate in the 1990 Nelchina caribou hunt. On August 23, 1990, Palmer shot two caribou. The State charged him with violating the bag limit of one caribou under former emergency regulation 5 AAC 85.025(a)(8).

Palmer filed a motion to dismiss the charges, arguing that he could not be prosecuted because the regulation was invalid. The trial court denied the motion and Palmer subsequently pled no contest to the charge. Palmer appealed. The court of appeals reversed. *See Palmer v. State,* Mem.Op. & J.

No. 2643 (Alaska App., March 10, 1993). Noting that the State conceded that the emergency regulation was invalid, the court held that Palmer had a right to insist that an indictment or complaint against him be based on a valid statutory or regulatory enactment. *Id.* Since Palmer was not prosecuted under a valid regulation, the court concluded that the charges against him should have been dismissed. *Id.*

We granted the State's petition for hearing, limiting the issue to whether the invalid portion of the regulation was severable from the remaining portions of the regulation.[1] The court of appeals did not consider the issue of severability.

In 1986, the State passed a subsistence law which granted a preference to rural residents to take fish and game for subsistence purposes. AS 16.05.258; *see also McDowell v. State* 785 P.2d 1 (Alaska 1989). In accordance with the statute, the Board of Game (Board) adopted regulations governing subsistence hunts for rural residents, including regulations for the Nelchina caribou herd. *See* former 5 AAC 80.025(3); 5 AAC 85.025(8). In *McDowell*, this court found

that the rural preference expressed in AS 16.05.258 violated several provisions of the Alaska Constitution. 785 P.2d at 12. In addition to greatly increasing the number of eligible subsistence users, the *McDowell* decision cast doubt on the validity of many of the Board's subsistence regulations.

With respect to the Nelchina caribou herd, the increased number of eligible subsistence participants meant the Board would have to implement a Tier II subsistence hunt.[2] The Board realized, however, that it was not possible to implement a Tier II hunt in the amount of time remaining before the normal fall season for Nelchina caribou. Given the circumstances, the Board faced three choices: cancel the fall hunt, postpone the fall hunt until a Tier II hunt could be implemented, or provide for a registration hunt designed to accommodate potential Tier II users. The Board believed that the first two alternatives, cancelling or postponing the fall hunt, were contrary to the welfare of the herd and the interests of subsistence users. Therefore, the Board chose the third alternative and adopted emergency regulation 5 AAC 85.025(a)(8).[3] The regulation provided for a

---

**1.** The State also sought review from the court of appeals' conclusion that it had conceded that the regulation was invalid. We express no view on that point. If, however, the concession was made, it related to non-compliance with the standards set forth in former AS 16.05.258(c) concerning who may participate in a Tier II hunt—a hunt in which "it is necessary to restrict ... subsistence hunting." Former AS 16.05.258.

In our order granting review, we limited this appeal to one issue: "Assuming the participatory (Tier II) component of 5 AAC 85.025(a)(8) is invalid, is that component severable, leaving the remaining components of the regulation, including the bag limit, valid?" *See* Alaska Supreme Court Order (May 5, 1993).

**2.** The Board realized that the Nelchina herd was not big enough to accommodate the increased number of subsistence hunters who might want to participate. In such cases, former AS 16.05.258 provided for a Tier II hunt. Officials implementing a Tier II hunt limited the eligible subsistence hunters on the basis of three factors: customary and direct dependence on the fish stock or game population as the mainstay of livelihood, local residency, and availability of alternative resources. Former AS 16.05.258.

**3.** 5 AAC 85.025(a)(8) stated:

| Units and Bag limits | Subsistence/Resident Open Season | Nonresident Open Season |
| --- | --- | --- |
| Units 13 and 14(B) 1 caribou by registration or Tier II permit only. The fall registration permit hunt will be closed when 2,000 caribou have been taken; | Aug. 22–23 Aug. 28–30 Sept. 18–20 | No open season. |
| The Tier II permit hunt will be conducted during the Jan. 5—Mar. 31 season; ... The winter Tier II hunt will be closed when 2,000 caribou have been taken. | Jan. 5–Mar. 31 | |

registration hunt, with registration locations in four communities near the Nelchina herd. The Board's aim was to make it easy for subsistence hunters who relied on the Nelchina caribou herd to obtain hunting permits.

Like all hunting regulations in Alaska, the emergency regulation had three components: a participatory component, which defines who may hunt; a seasonal component, which defines when the hunt takes place; and a bag limit component, which defines how many animals a hunter can kill. In accordance with previous regulations governing the Nelchina hunt, the emergency regulation limited each hunter to one caribou. The regulation also provided for seasonal restrictions and limited the total number of caribou that could be taken.

■ The sole issue before this court is whether the participatory component of former 5 AAC 85.025(a)(8), which we assume for the purpose of this case to have been invalid, is severable from the remainder of the regulation.[4] The two-fold test for determining the severability of a part of a statute is well settled:

> A provision will not be deemed severable "unless it appears both that, standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall."

*Lynden Transp., Inc. v. State,* 532 P.2d 700, 713 (Alaska 1975) (quoting *Dorchy v. Kansas,* 264 U.S. 286, 290, 44 S.Ct. 323, 324, 68 L.Ed. 686 (1924)).[5]

■ The first component of the *Lynden* test is met in this case as the regulation is capable of standing on its own absent the participatory component. The resulting regulation would read:

| Units and Bag limits | Subsistence/ Resident Open Season | Nonresident Open Season |
| --- | --- | --- |
| Units 13 and 14(B) 1 caribou. | Aug. 22–23 Aug. 28–30 Sept. 18–20 | No open season. |
| The fall hunt will be closed when 2,000 caribou have been taken; | | |
| The Tier II permit hunt will be conducted during the Jan. 5—Mar. 31 season; ... The winter Tier II hunt will be closed when 2,000 caribou have been taken. | Jan. 5–Mar. 31 | |

Absent the participatory component, the regulation allows every Alaskan to take one caribou from the Nelchina herd during the fall hunting season until 2,000 caribou have been taken. Clearly, this regulation is capable of being given legal effect regardless of the validity of the participatory component.

4. The severability of a portion of a regulation is a question of law upon which this court exercises its independent judgment. *Odum v. University of Alaska, Anchorage,* 845 P.2d 432, 434 (Alaska 1993).

Administrative regulations which are legislative in character are interpreted under the same principles applicable to statutes. *State, Dep't of Highways v. Green,* 586 P.2d 595, 603 n. 24 (Alaska 1978). AS 01.10.030 provides:

*Constitutionality and severability.* Any law heretofore or hereafter enacted by the Alaska legislature which lacks a severability clause shall be construed as though it contained the clause in the following language, "If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be affected thereby."

5. The test set forth in *Lynden* refers specifically to determining the severability of a statute but it is equally applicable to determining the severability of a regulation. *See Wilson v. Commercial Fisheries Entry Comm'n,* 770 P.2d 1126, 1130 (Alaska 1989) (citing *Lynden* to support severability of regulation); *Kenai Peninsula Borough Sch. Dist. v. Kenai Peninsula Borough Sch. Dist. Classified Ass'n,* 590 P.2d 437 (Alaska 1979) (applying *Lynden* test to determine whether valid portions of school district's labor policy could be given legal effect); *Beran v. State,* 705 P.2d 1280, 1285 (Alaska App.1985) (applying *Lynden* two-fold test to determine severability of regulation); *see also State, Dep't of Highways v. Green,* 586 P.2d 595, 603 n. 24 (Alaska 1978) (stating that administrative regulations which are legislative in character are interpreted using same principles as those applicable to statutes).

The second component of the *Lynden* test requires us to determine whether the Board would have intended the remainder of the regulation to stand if the participatory component were declared invalid. *See Lynden* 532 P.2d at 713; *Jefferson v. State* 527 P.2d 37, 41 (Alaska 1974) (stating that a reviewing court should determine "whether the remaining parts are so independent and complete that it may be presumed that the legislature would have enacted the valid parts without regard to the invalid parts"). Palmer argues that the Board's purpose in adopting the emergency regulation was two-fold: to establish a subsistence hunt and to maintain and protect the resource by limiting the total number of caribou that could be taken from the herd. Palmer's assertion that the Board intended to establish a subsistence hunt is only partially correct. Although the Board did want to accommodate subsistence users, it realized that it could not establish a subsistence hunt in the limited time available. Faced with the alternatives of cancelling or postponing the fall hunt, both of which would have had a negative impact on the herd and on subsistence users, the Board chose to proceed with a less than perfect hunt. Thus, the main purpose of the emergency regulation was not to create a subsistence hunt but to ensure a fall hunt of some kind. The Board designed the hunt to accommodate subsistence users but realized it could not completely eliminate other hunters from participating. The regulation that remains after eliminating the participatory component meets this goal.

Palmer also argues that without the participation restriction, there is nothing in the regulation to protect the herd; therefore, the Board could not have intended the regulation to stand. Palmer reaches this conclusion by eliminating too much of the regulation. Assuming the participatory component of the regulation is flawed, the remainder of the regulation includes the bag limit, the season restriction, and the maximum limit on the number of·caribou that could be taken during the fall hunt. Thus, the regulation adequate-ly protects the resource and Palmer's argument must fail.

Palmer is charged with violating the bag limit of emergency regulation 5 AAC 85.025(a)(8). Since we have found that the invalid participatory component of the regulation is severable from the remainder of the regulation, the charges against Palmer should not have been dismissed. Thus, we REVERSE the decision of the court of appeals.[6]

---

6. It is worth noting that although many cases finding a portion of a regulation or statute severable involve prospective as well as retroactive applications, here there is no question of prospective application. The regulation at issue governed only the 1990 Nelchina caribou hunt and is no longer in force.