NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALASKAN CRUDE CORPORATION, ) | |
| ) | Supreme Court No.: S-18290 |
| Appellant, ) | |
| ) | Superior Court No.: 3AN-20-09027 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| ALASKA OIL & GAS ) | AND JUDGMENT* |
| CONSERVATION COMMISSION, ) | |
| ) | No. 1958 – April 5, 2023 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances: James B. Gottstein, Law Offices of James B. Gottstein, Anchorage, for Appellant. Thomas A. Ballantine, Senior Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I. INTRODUCTION

An oil and gas exploration company obtained three drilling permits in the mid-1980s, posted the $200,000 remediation performance bond required by an existing regulation, and drilled the wells. In 1999 the regulation was amended to broaden the

---

\* Entered under Alaska Appellate Rule 214.

scope of the bond's remediation performance coverage, and in 2019 the regulation was amended to increase the required bond amount for drilling permits. The company was directed to increase the amount of its bond to conform to the amended regulation. The company requested agency reconsideration and asserted that the amended regulation exceeded agency authority and was unlawfully ex post facto. The agency denied reconsideration without addressing the corporation's ex post facto argument, or considering the possible application of a statute prohibiting certain retroactive regulations, and without expressly considering how the language of the new regulation — referring to operators requesting drilling permits and to denial of requested permits for failure to comply — could apply to an operator who had obtained permits and drilled wells over thirty years earlier. The superior court affirmed the agency decision on appeal, and the company appealed to us. We decline to rule on the company's statutory authority argument because no live controversy about the scope of bond coverage exists at this time. We also decline to rule on the retroactivity issue in light of a record devoid of any real agency analysis. For the reasons explained below, we VACATE the superior court's decision and REMAND to the superior court to REMAND to the agency for a new hearing focusing on whether the terms of the bonding regulation apply to the company and whether such application is precluded by the statute's retroactivity rule.

## II.    FACTS AND PROCEEDINGS

### A.    Parties

Alaskan Crude Corporation is engaged in oil and gas exploration and development in Alaska.[1] The Alaska Oil and Gas Conservation Commission is an

---

[1]    Alaskan Crude and its president, James White, have a long history of disputes with State entities over oil and gas leases. *See, e.g.*, *State, Dep't of Nat. Res. v. Alaskan Crude Corp.* [*& James W. White*], 441 P.3d 393, 395-96 n.1, 406-07 (Alaska 2018) (identifying White as Alaskan Crude's president; reversing superior court decision and affirming agency decision not to extend Cook Inlet area oil and gas lease);

independent, quasi-judicial State agency[2] that has been granted wide powers to monitor and prevent waste of the State's oil and gas resources and to regulate oil and gas exploration operations.[3] Relevant to this appeal, the Commission is responsible for issuing drilling permits for oil and gas wells[4] and may, as a condition to a drilling permit, require an operator to furnish a bond to secure "performance of the duty to plug each dry or abandoned well or the repair of wells causing waste."[5] The Commission is authorized to adopt regulations and issue orders to carry out its duties.[6]

---

*White* [*& Alaskan Crude Corp.*] *v. State, Dep't of Nat. Res.*, No. S-15334, 2016 WL 1071444 (Alaska Mar. 16, 2016) (affirming superior court's decision terminating unit agreement for North Slope oil and gas leases); *Alaskan Crude Corp.* [*& James W. White*] *v. State, Alaska Oil & Gas Conservation Comm'n*, 309 P.3d 1249, 1251 (Alaska 2013) (affirming superior court decision affirming agency decision denying application to reclassify North Slope oil well as gas facility to exempt it from oil discharge contingency plan requirements for reopening well); *Alaskan Crude Corp.* [*& James W. White*] *v. State, Dep't of Nat. Res., Div. of Oil & Gas*, 261 P.3d 412, 413, 419-22 (Alaska 2011) (identifying White as both individual leaseholder and president of Alaskan Crude; affirming superior court's decision affirming agency decision declaring lessee in default in North Slope unit agreement); *White* [*et al.*] *v. State, Dep't of Nat. Res.*, 14 P.3d 956, 959-63 (Alaska 2000) (affirming, on res judicata grounds, superior court's dismissal of White's unconstitutional takings claim based on agency's refusal to transfer Cook Inlet area oil and gas leases prior to their expiration); *White v. State, Dep't of Nat. Res.*, 984 P.2d 1122, 1125-28 (Alaska 1999) (affirming several bases for superior court's affirmance of agency's termination of oil and gas lease but reversing and remanding to agency for hearing on one issue relating to lease extension).

[2]     AS 31.05.005(a); *French v. Alaska Oil & Gas Conservation Comm'n*, 498 P.3d 1026, 1027 (Alaska 2021).

[3]     *See* AS 31.05.030 (outlining Commission's powers and duties).

[4]     AS 31.05.090(a).

[5]     AS 31.05.030(d)(4).

[6]     AS 31.05.030(c); *see* 20 Alaska Administrative Code (AAC) 25.005 *et seq.* (setting out Commission's permitting regulations).

**B.      Alaskan Crude's Oil And Gas Wells And Original Performance Bond**

In the mid-1980s Alaskan Crude obtained permits from the Commission and drilled three wells, referred to as the Burglin well, the Pelch well, and the Katalla well.  At that time the Commission's regulation required a $200,000 blanket performance bond from operators with two or more wells in Alaska[7] to "ensure that each well is abandoned or repaired in accordance with" other regulations.[8]  Alaskan Crude posted a $200,000 bond, which the Commission still holds.

**C.      Later Changes To Commission's Bond Requirements**

In 1991 the legislature recommended that the Commission increase its bond requirement to cover the rising costs of plugging and abandoning wells.  The legislature's recommendation went unheeded until 2019.  But in 1999 the bonding regulation was amended in part, leaving the existing bond schedule in place but broadening the purpose of the bond "to ensure that each well is drilled, operated, maintained, repaired, and abandoned and each location is cleared" as required by law.[9]

In May 2019, after holding public hearings and surveying other states' bonding requirements, the Commission amended its bonding regulation to require — for "an operator proposing to drill a well for which a permit is required"[10] — a bond of $400,000 per well for up to ten wells operated by a common owner.[11]  The purpose of the bond broadened again to add coverage for an operator's duty to plug a well at the

---

[7]      *See* former 20 AAC 25.025(a)-(b) (1986).

[8]      *See* former 20 AAC 25.025(a) (1986); *cf.* AS 31.05.030(d)(4) (describing purposes for which performance bonds may be required in connection with drilling permit).

[9]      20 AAC 25.025(a) (as amended 11/7/1999).

[10]      20 AAC 25.025(a) (as amended 5/18/2019).

[11]      20 AAC 25.025(b)(1) (as amended 5/18/2019).

end of its life.[12]  The Commission retained the discretion to increase or decrease the amount of a required bond if relevant evidence warranted an adjustment,[13] and the regulation allowed operators with bonds already in place to use a staggered schedule for coming into compliance with the new bonding schedule.[14]  The regulation also stated that the Commission "will not approve" a drilling permit for an operator not in compliance with the new bond schedule.[15]

### D.    Administrative Proceedings

In July 2019 the Commission notified Alaskan Crude that it was required to post a $400,000 performance bond for each of its three wells, which then were unused but unplugged.  The Commission said Alaskan Crude was to supplement its existing bond in two annual installments of $500,000, with the first installment due in August.

Alaskan Crude asked for reconsideration.  Its attorney argued that the "imposition of the increased bonding is erroneous" and "illegal"; he referred to the amended regulation as an "ex post facto application"[16] of a new regulation and argued

---

[12]    *Compare* 20 AAC 25.025(a) (as amended 11/7/1999), *with* 20 AAC 25.025(a) (as amended 5/18/2019).

[13]    20 AAC 25.025(b)(3) (as amended 5/18/2019).

[14]    20 AAC 25.025(c) (as amended 5/18/2019).

[15]    20 AAC 25.025(g) (as amended 5/18/2019).  In 2021 the Commission again amended the bonding regulation, changing the bond schedule amounts but leaving in place the purpose for the bond, its stated application to operators "proposing to drill a well for which a permit is required," and the Commission's remedy for an operator's failure to obtain the required bond (specifically that the Commission "will not" approve a drilling permit from an operator that is out of compliance" with the bonding regulation).  *Compare* 20 AAC 25.025(a), (b), and (g) (as amended 5/18/2019), *with* 20 AAC 25.025 (a), (b), and (g) (as amended 3/7/2021).  The bond schedule change has no relevance to the matter before us.

[16]    *Ex post facto,* BLACK'S LAW DICTIONARY (11th ed. 2019) ("Done or made after the fact; having retroactive force or effect."); *ex post facto law*, *id.*

that the regulation exceeded the Commission's statutory authority. The Commission granted the request for reconsideration in early August and stayed the first bond installment until the Commission took further action.

The Commission held a public hearing for the reconsideration request in late January 2020. Alaskan Crude's attorney appeared at the hearing. He first contended that applying the updated regulation to Alaskan Crude was "an unconstitutional ex post facto law" because it had "put up the required bond at the time, and the Commission can't simply . . . go back and increase [the bonding] requirements."[17] He cited *Underwood v. State* for the proposition that a law is an unconstitutional ex post facto enactment when it "takes away or impairs vested rights acquired under existing laws or creates new obligations, imposes a new duty or attaches a new disability [with] respect to transactions or considerations already passed."[18]

Alaskan Crude's attorney also contended that, even if the revised regulation were not an illegal ex post facto law, it was invalid because it "exceeds the authority of the Commission." He argued that AS 31.05.030(d)(4) allows the Commission to require bonds only to cover the costs "to plug and abandon wells or

---

("Constitutional law. A statute that criminalizes an action and simultaneously provides for punishment of those who took the action before it had legally become a crime; specif., a law that impermissibly applies retroactively, esp. in a way that negatively affects a person's rights, as by making into a crime an action that was legal when it was committed or increasing the punishment for past conduct. *Ex post facto* criminal laws are prohibited by the U.S. Constitution. But retrospective civil laws may be allowed.").

[17]    *Cf.* Alaska Const., art. I, §15 ("No . . . ex post facto law shall be passed.").

[18]    881 P.2d 322, 327-28 (Alaska 1994) (concluding, on merits of claim, that statute amendment regarding residency for Permanent Fund dividend was not unconstitutional ex post facto law). *But see Pfiefer v. State, Dep't of Health & Soc. Servs.*, 260 P.3d 1072, 1081 (Alaska 2011) (rejecting, without mentioning *Underwood*, application of constitutional ex post facto prohibition in civil matters).

repair wells causing waste." He argued that including the additional items in the revised regulation[19] — most of which actually were added by the 1999 regulation amendment[20] — "exceed[ed] the authority of the Commission."

At the end of the hearing, Alaskan Crude's attorney was asked to provide the status of Alaskan Crude's three wells and its plans for them. In mid-February he sent the Commission a status update, raising additional arguments. He asserted that the Burglin well became the property of the Department of Natural Resources when Alaskan Crude's oil and gas lease terminated in 1990, absolving Alaskan Crude "of all further responsibility [for] eventual abandonment and rehabilitation."[21] He contended that the Katalla well was on a private landowner's property and that "Alaskan Crude has no authority to enter on the property to plug it." And he asserted that because Alaskan Crude had a permit and permission to re-enter and re-work the Pelch well, also situated on private property, plugging and abandoning the well would be "premature."

In October 2020 the Commission denied Alaskan Crude's requested relief. In relevant part, the Commission decided: the Commission is "authorized to require a bond for the performance of the duty to plug wells and the duty to repair wells causing waste"; every operator must have a bond in place to ensure compliance with those duties; Alaskan Crude is the operator of record for the Katalla, Burglin, and Pelch wells

---

[19]     *Compare* AS 31.05.030(d)(4), *with* 20 AAC 25.025(a) (as amended 5/18/2019).

[20]     *See supra* note 9 and related text.

[21]     *Cf. White* [*& Alaskan Crude*] *v. State, Dep't of Nat. Res.*, No. S-15334, 216 WL 1071444 (Alaska Mar. 16, 2016) (regarding appeal of dispute over Burglin well and related unit agreement; noting lease area containing Burglin well was set to expire in 2006 but was extended with unit agreement and detailing disputes over subsequent years about Burglin well development); *Alaskan Crude Corp.* [*& James W. White*] *v. State, Dep't of Nat. Res., Div. of Oil & Gas*, 261 P.3d 412, 414-18 (Alaska 2011) (outlining dispute over Burglin well development).

and is required to have a bond in place for all three wells; and a "bond does not confer any rights on an operator." The Commission made no express comment on retroactivity concerns generally or Alaskan Crude's "ex post facto" concern specifically. The Commission advised that without written proof private landowners had "prohibited [Alaskan Crude] from entering the properties to plug and abandon the wells or that the landowners have agreed to assume responsibility to plug and abandon the wells, [Alaskan Crude] remains responsible to do so." Lastly, the Commission noted that Alaskan Crude had applied for separate approval to abandon the Burglin well in July 2018 but that the well had not yet been plugged and abandoned. The Commission informed Alaskan Crude: "In addition to the bond required, the [Commission] reserves the right to pursue enforcement action in connection with the failure to properly plug and abandon [the] Burglin [well]." The Commission ordered Alaskan Crude to satisfy its outstanding $1,000,000 supplemental bond obligation.

### E.    Superior Court Appellate Proceedings

Alaskan Crude filed a superior court appeal in November. Its points on appeal were that the revised regulation was an unconstitutional ex post facto law in contravention of article I, section 15 of the Alaska Constitution[22] and that it exceeded the Commission's statutory authority by including that the required bond "is security to ensure that each well is drilled, operated, maintained, and repaired, and each location is cleared in accordance with the . . . Commission's regulations."

Alaskan Crude argued for the first time in its opening brief that the revised bonding regulation was illegally retroactive under the Administrative Procedures Act (APA),[23] not mentioning its earlier constitutional ex post facto argument. Alaskan

---

[22]    *See supra* note 17.

[23]    *See* AS 44.62.010-.950 ("Administrative Procedures Act"); AS 44.62.240 ("If a regulation adopted by an agency under this chapter is primarily legislative, the regulation has prospective effect only.").

Crude argued that "[t]he Commission did not even address its retroactivity problem" in its reconsideration order. Alaskan Crude also argued, as it had during the administrative proceedings, that the amended bonding regulation exceeded the Commission's statutory authority under AS 31.05.030(d)(4).

The Commission responded that Alaskan Crude had waived its APA retroactivity argument by failing to raise it during the administrative proceedings, when it instead had argued that the regulation was an illegal ex post facto enactment. The Commission also asserted that the bonding regulation applies only prospectively — because it applies only to unplugged wells and operators of record in May 2019 — and deals with a subject within the Commission's expertise and the scope of its powers under AS 31.05. Alaskan Crude admitted in its reply brief that in the administrative proceedings it had "cited the wrong basis for the prohibition against retroactivity applicable to the regulation," but it urged the court to consider the issue on appeal.

The superior court agreed with the Commission that Alaskan Crude had not raised its APA retroactivity argument during the administrative proceedings, and the court said it therefore would review the Commission's order regarding the prospective nature of the regulation only for plain error. The court thus stated that Alaskan Crude would have to "show that 'an obvious mistake has been made which creates a high likelihood that injustice has resulted.' "[24] The court noted Alaskan Crude's argument that imposing an increased bond requirement 30 years "after the fact" is prohibited by AS 44.62.240 because the increased bond amount would be an imposition of a new duty for an already completed transaction. But using plain error review and looking only to two subsections of amended 20 AAC 25.025 — .025(b)(2) and (d) — the court said it was unpersuaded by Alaskan Crude's argument because

---

[24] Quoting *McCavit v. Lacher*, 447 P.3d 726, 732 (Alaska 2019) (describing standard for plain error review).

20 AAC 25.025(b)(2) "is a prospective regulation that applies only to existing wells 'for which the commission has issued a Permit to Drill (Form 10-401) that [have] *not* been permanently plugged and abandoned.'" The court said that the relevant transaction under 20 AAC 25.025(d) is complete only when an operator's existing wells have been permanently plugged and abandoned in accordance with regulations and the Commission has approved final clearance. Thus, according to the court, the amended regulation did not implicate Alaskan Crude's rights or impose a new duty for an already-completed transaction.

The court also ruled that the scope of 20 AAC 20.025(a)'s bond coverage falls within the scope of the Commission's statutory authority to require bonds for the purpose of plugging or repairing wells to prevent waste. The court determined that 20 AAC 25.025(a) amounts only to a purpose clause and that the Commission to date had required or enforced bonds only for the statutorily authorized purpose of ensuring that operators plug and abandon their wells. The court found that the bonding regulation's longstanding nature and its historically narrow application to plugging and abandoning unused wells weighed in favor of the regulation's validity: "[I]t is clear that a bond is paid, forfeited, or released specifically in accordance with operators' duties to plug and abandon unused wells" and "the amended bond amounts were only focused on the costs associated with plugging and abandoning unused wells, not costs associated with drilling, operation, or maintaining wells."

### F.    Appeal To Us

Alaskan Crude appeals to us from the superior court's decision, arguing that 20 AAC 25.025(a) is invalid because it exceeds the scope of the Commission's authority under AS 31.05.030(d) and that 20 AAC 25.025(b) is impermissibly retroactive as applied to Alaskan Crude. The parties' briefing to us essentially rehashes the arguments raised in the superior court.

## III. DISCUSSION

### A. We Do Not Reach Whether The Regulation Exceeds The Statute's Authority.

Alaskan Crude argues that, under amended 20 AAC 25.025(a), the required performance bonds secure duties beyond those expressly identified in AS 31.05.030(d)(4) — plugging, repairing, and abandoning wells. The Commission responds that Alaskan Crude waived this argument by not bringing it sooner because the language of 20 AAC 25.025(a) has essentially been the same since the 1999 amendment to the regulation. The Commission then argues that if we conclude Alaskan Crude did not waive its statutory authority argument, we should hold that 20 AAC 25.025(a) is a reasonable interpretation of the agency's enabling statutes dealing with subject matter within the scope of its expertise.

The Commission is correct that much of the disputed regulation language has been in existence since 1999.[25] But it is unclear why Alaskan Crude would have had cause to challenge the language change at that time, or at any other time, given that its bond had been in place for years without the Commission having sought to enforce the bond for any reason. At the same time, it also is difficult to understand why Alaskan Crude's challenge to the amended regulation's alleged overbreadth is ripe now.[26] The

---

[25] *Compare* 20 AAC 25.025(a) (as amended 11/7/1999), *with* 20 AAC 25.025(a) (as amended 5/18/2019).

[26] "A ripe suit will present 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' The primary concern of ripeness is 'whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.' The doctrine of ripeness thus 'requires a plaintiff to claim that either a legal injury has been suffered or that one will be suffered in the future.' " *Borer v. Eyak Corp.*, 507 P.3d 49, 58 (Alaska 2022); *reh'g denied* (May 25, 2022) (first quoting *State v. ACLU of Alaska*, 204 P.3d 364, 369 (Alaska 2009); then quoting *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 359 (Alaska 2001); and then quoting

Commission's position has been that it will enforce the regulation only for the purposes set forth in the statute, and the superior court concluded that the Commission has not attempted to use existing bonds for purposes other than those expressed in the statute. Alaskan Crude does not dispute that the Commission had and has authority to look to existing bonds for the reasons set out in the statute, and it would be an incredible stretch to decide that the entire regulation is void due to possible overbreadth rather than decide that any overbreadth is unenforceable when and as applied.[27]

Until the Commission looks to Alaskan Crude's performance bond for something other than the duty to plug or repair already drilled wells, there is no real dispute to be resolved. We therefore decline to reach Alaskan Crude's statutory authorization argument.

### B. We Decline To Rule On The Retroactivity Issue On The Existing Record, And We Remand To The Agency For Further Proceedings.

A fundamental flaw in these proceedings counsels against deciding, on the record before us, whether the 2019 amendment to 20 AAC 25.025 has invalid retroactive effect as applied to Alaskan Crude or prospective effect only.[28] That flaw is the parties' failure to grapple with the correct legal analysis during the administrative proceedings and their failure to conduct a comprehensive examination and appropriate interpretative analysis of the amended bonding regulation during the superior court

---

*id.*). "The purpose of the ripeness doctrine is to prevent courts from 'entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " *Alaska Consumer Advoc. Program v. Alaska Pub. Utils. Comm'n*, 793 P.2d 1028, 1032 (Alaska 1990) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)).

[27]     *See, e.g.*, *State v. Palmer*, 882 P.2d 386, 388 (Alaska 1994) (discussing severability of unenforceable regulation provisions).

[28]     *See supra* note 23 and related text.

proceedings. Tied to these unfortunate aspects of the underlying proceedings is the requirement that a party exhaust administrative remedies[29] and the notion of primary jurisdiction.[30]

### 1. Agency proceedings

The first deficiency arises from Alaskan Crude's challenge to the application of the amended bonding regulation under the Alaska Constitution's ex post facto provision rather than under the APA. Although the 1994 case Alaskan Crude relied upon did apply the ex post facto analysis in a civil matter, we later rejected application of an ex post facto analysis in civil matters.[31] But while Alaskan Crude's retroactivity argument was mislabeled, Alaskan Crude clearly pointed out its concern about applying the regulation to an operator with pre-existing drilling permits, posted bonds, and drilled wells. And while the Commission likely fully understood the implications of Alaskan Crude's argument, it took a head-in-the-sand approach by (1) not addressing Alaskan Crude's ex post facto argument in any fashion and (2) not noting and addressing the correct APA retroactivity analysis. That may have seemed a sound strategic move to allow easier denial of Alaskan Crude's reconsideration request, but it leaves an administrative record void on whether the amended bonding regulation

---

[29]   Exhaustion of administrative remedies refers to "the requirement that a party exhaust the administrative *process* as a predicate for judicial review." *Walker v. State, Dep't of Corr.*, 421 P.3d 74, 79 n.17 (Alaska 2018) (emphasis in original).

[30]   *See C.G.A. v. State*, 824 P.2d 1364, 1370 (Alaska 1992) ("Primary jurisdiction is a doctrine of common law, wholly court-made, that is designed to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented." (quoting 4 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE, § 22:1, 81 (2d ed. 1983))).

[31]   *See supra* note 18.

is primarily legislative with only prospective effect.[32]  For example, the relevant rule-making file likely would have been a part of the administrative record to assist in the necessary regulatory interpretation.  And there is no Commission fact-finding establishing whether Alaskan Crude is an "operator proposing to drill a well for which a permit is required" as set forth in amended 20 AAC 25.025(a); the record seems to be clear that Alaskan Crude's three wells were drilled in the mid-1980s in connection with bonds tendered and permits obtained at that time.

The policy behind the exhaustion of remedies doctrine is for agencies to address challenges to their actions and fix mistakes at the agency level.[33]  Alaskan Crude's failure to raise the correct analytical framework, and the Commission's failure to respond with the correct analytical framework, runs afoul of the goals of the exhaustion of remedies doctrine.  And the doctrine of primary jurisdiction is implicated; we believe the Commission, not this court, should make the initial determination.[34]

### 2.    Superior court proceedings

The second deficiency arises from the superior court's cursory analysis of the amended bonding regulation under plain error review.  For example, amended 20 AAC 25.025(a) provides that the regulation applies to "an operator *proposing to drill a well* for which a permit is required" (emphasis added); it does not state that it applies to an operator who has already drilled a well under an already existing permit, has

---

[32]    *Cf. supra* note 23 and related text.

[33]    *See Smart v. State, Dep't of Health & Soc. Servs.*, 237 P.3d 1010, 1015 (Alaska 2010) ("We have noted that 'the basic purpose of the doctrine of exhaustion of administrative remedies is "to allow an administrative agency to perform functions within its special competence — to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." ' " (quoting *Mount Juneau Enters. v. City & Borough of Juneau*, 923 P.2d 768, 776-77 (Alaska 1996))).

[34]    *See, e.g.*, *C.G.A.*, 824 P.2d at 1370 & nn.18-19 (retaining jurisdiction but affording parties opportunity to obtain initial agency decision on issue before court).

already posted a performance bond in accordance with applicable law at the time of the permit/bond/drilling, and is not seeking to drill another well. Nothing in .025(a) refers to requiring an operator of record with existing wells to comply with the new bonding schedule. And the remedy set out in 20 AAC 25.025(g) is telling: "The commission will not approve a permit to drill application from an operator that is out of compliance with this section." Just as .025(a) refers to a proposal to drill, .025(g) refers to denying a permit for a proposal to drill. Neither refers to an operator of record not seeking a permit to drill. If Alaskan Crude is not proposing to drill a new well and declines to supplement its performance bond as directed by the Commission, how will the Commission deny Alaskan Crude a drilling permit that it has not requested?

### 3. Appeal to us

As in the superior court, on appeal to us the parties simply do not engage with a comprehensive analysis of the amended bonding regulation or the APA's retroactivity prohibition. As suggested above, in the absence of Alaskan Crude's application to drill a new well, the relevant transaction for a retroactivity analysis may be obtaining a permit to drill a well and concurrently posting the then-required performance bond, not the ultimate closing and plugging of a well. Alaskan Crude's argument thus may have far more force than the superior court recognized under its deferential plain error review.

Correctly interpreting 20 AAC 25.025 is important to the Commission fulfilling its duties, to properly monitoring Alaska's oil and gas drilling and operations, and to all Alaskans interested in appropriately using Alaska's resources. Attempting to resolve this dispute on the inadequate record before us, and under a plain error standard of review rather than independent de novo review, does not advance the matter. Rather than ordering supplemental briefing and later attempting to divine the meaning of 20 AAC 25.025 on the existing record, we believe the best course of action is to remand to the superior court to remand to the Commission for a new hearing on Alaskan

Crude's reconsideration request, focusing on whether the terms of the bonding regulation apply to Alaskan Crude and whether such application is precluded by the APA's retroactivity rule. This will afford the parties an opportunity to create an appropriate record and afford the Commission an opportunity to address APA retroactivity in the first instance as part of the traditional primary jurisdiction and exhaustion of remedies framework.

## IV.   CONCLUSION

For the reasons expressed above, we VACATE the superior court's decision and REMAND to the superior court to REMAND to the Commission for a new hearing on Alaskan Crude's reconsideration request consistent with this decision.